# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

LOGAN LYTTLE, on his own behalf
and on behalf of all similarly situated
individuals,

    Plaintiff,

v.　　　　　　　　　　　　　　　　　　Case No: 8:19-cv-2313-CEH-TGW

TRULIEVE, INC., a Florida Profit
Corporation,

    Defendant.
_____/

## ORDER

This matter comes before the Court upon Hasani Felix's Opposed Motion to Intervene for the Purpose of Serving as Class Representative (the "Motion to Intervene") (Doc. 97), to which Trulieve, Inc., responds in opposition (Doc. 101).

Logan Lyttle initiated this Fair Credit Reporting Act lawsuit against Trulieve, Inc., on behalf of himself and all others similarly situated on September 17, 2019. Now, over nineteen months later, Hasani Felix seeks the Court's permission to intervene. But while Felix may have a claim that shares a common question of law or fact with the instant action, he fails to demonstrate that his request to intervene is timely. Additionally, permitting intervention would result in undue delay or prejudice to the adjudication of the original parties' rights. Therefore, having considered the parties' submissions and being fully advised in the premises, the Court will deny the Motion to Intervene.

## I.  BACKGROUND

An overview of the allegations in the operative Class Action Complaint (the "Complaint") and the relevant procedural history of this action supplies helpful context for the Motion to Intervene.

Beginning with the allegations of the Complaint, Logan Lyttle ("Lyttle"), on behalf of himself and all others similarly situated, brings this action against Trulieve, Inc. ("Trulieve"), for alleged violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* Doc. 1 ¶¶68, 72–75, 103–113. Lyttle states the following factual allegations. Trulieve conducts background checks on job applicants as part of a standard screening process. *Id.* at ¶24. Trulieve also occasionally conducts background checks on its employees during the course of their employment. *Id.* In or about April of 2019, Lyttle applied for employment with Trulieve. *Id.* at ¶51. Trulieve procured Lyttle's consumer report from Personal Security Concepts, LLC ("PSC").[1] *Id.* at ¶52. Lyttle did not know the nature and scope of Trulieve's investigation into his background. *Id.* at ¶54.

Trulieve conditionally offered employment to Lyttle. *Id.* at ¶57. However, based on the contents of the consumer report, Trulieve rescinded the job offer and rejected Lyttle's application for employment. *Id.* at ¶58. Before rescinding the employment offer, Trulieve did not provide Lyttle with: (1) notice of its intent to rescind the

---

[1] Lyttle previously brought claims against PSC in this action, too, but the Court dismissed those claims, with prejudice, in June of 2020. Doc. 53 at 1.

employment offer; (2) a copy of Lyttle's background check; or (3) a summary of his rights. *Id.* at ¶59.

After Trulieve rejected Lyttle's employment application, Lyttle became concerned about the information contained in his consumer report, whether the report was accurate, and the impact of the report on his future employment prospects. *Id.* at ¶60. The retail regional human resources manager for Trulieve admitted that Trulieve had mistakenly denied employment to Lyttle in April of 2019 based on his consumer report. *Id.* at ¶65. If Trulieve had provided Lyttle with pre-adverse action notice, a copy of his consumer report, and a summary of rights in April of 2019, Lyttle could have clarified any confusion and started his career at Trulieve. *Id.* at ¶66. Trulieve did not afford Lyttle an opportunity to address any concerns regarding his consumer report or state his case before rejecting his employment application. *Id.*

Lyttle brings one claim against Trulieve under 15 U.S.C. § 1681b(b)(3)(A) on behalf of himself and a class labeled as the "Adverse Action Class," which consists of

> [a]ll Trulieve applicants and employees in the United States against whom adverse employment action was taken, based, in whole or in part, on information contained in a consumer report obtained within five years preceding the filing of this action through the date of final judgment, who were not provided notice, a copy of their report or summary of rights pursuant to § 1681b(b)(3)(A).

*Id.* at ¶¶11, 14, 19, 68, 103–105, 112–113.

Lyttle alleges that Trulieve violated 15 U.S.C. § 1681b(b)(3)(A) by failing to provide him and other Adverse Action Class members with pre-adverse action notice, a summary of their FCRA rights, and a copy of their consumer report prior to taking

3

adverse action. *Id.* at ¶105. Lyttle further alleges that the violations were willful and that Trulieve "acted in deliberate or reckless disregard of its obligations" and the rights of Lyttle and other Adverse Action Class members under 15 U.S.C. § 1681b(b)(3)(A). *Id.* at ¶106.

The Court heard oral argument on Lyttle's pending motion for class certification (the "Motion for Class Certification") on February 13, 2021. *See* Doc. 83 at 1. The Court initially deferred ruling on the Motion for Class Certification because Trulieve advised during oral argument that it intended to file a motion to dismiss for lack of standing. *See id*; Doc. 84. Trulieve subsequently moved to dismiss Count I and Count II of the Complaint for lack of standing under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Doc. 88 at 1–2. On March 5, 2021, however, the parties advised the Court that they had stipulated to the dismissal of Count I and Count II. Doc. 92 at 1. As such, the Motion for Class Certification pends.

On May 4, 2021, Hasani Felix ("Felix") filed the Motion to Intervene. Doc. 97 at 10. In seeking permissive intervention under Rule 24(b) of the Federal Rules of Civil Procedure, Felix claims that his intervention will "help ensure that the class is adequately represented" and that protecting and adjudicating the claims of the putative Adverse Action Class will further the interests of justice and judicial economy. *Id.* at 1. Felix provides a proposed, amended class action complaint (the "Proposed Complaint") with the Motion to Intervene and moves the Court to grant the Motion to Intervene, permit the filing of the Proposed Complaint, and find that (1) he timely moved to intervene; (2) Trulieve will not suffer any undue prejudice from his

4

intervention; (3) permitting intervention best serves the interests of justice and judicial economy; and (4) modifying the Case Management and Scheduling Order as appropriate. *Id.* at 8. Trulieve opposes the Motion to Intervene. Doc. 101 at 15.

## II.   LEGAL STANDARD

Rule 24 of the Federal Rules of Civil Procedure addresses intervention of right and permissive intervention. Fed. R. Civ. P. 24(a)–(b). Under Rule 24(b), which provides for permissive intervention by a party, a district court, upon a "timely motion," may permit anyone to intervene who:

> (A) is given a conditional right to intervene by a federal statute; or
>
> (B) has a claim or defense that shares with the main action a common question or law or fact.

Fed. R. Civ. P. 24(b)(1).

Additionally, in exercising its discretion when ruling on a motion for permissive intervention, a district court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). A motion to intervene must provide the grounds for intervention, and "a pleading that sets out the claim or defense for which intervention is sought" must accompany the motion. Fed. R. Civ. P. 24(c).

## III.   DISCUSSION

Felix seeks permissive intervention under Rule 24(b)(1)(B) of the Federal Rules of Civil Procedure. Doc. 97 at 1, 4–7. For the reasons set forth below, the Court declines to allow Felix to intervene.

5

A party seeking permissive intervention under Rule 24(b)(1)(B) "must show that: (1) his application to intervene is timely; and (2) his claim or defense and the main action have a question of law or fact in common." *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989).[2] Significantly, a district court maintains discretion to deny intervention even if each of these requirements is met, and the court's decision will be reviewed for an abuse of discretion. *Id.*; *Worlds v. Dep't of Health & Rehabilitative Servs., State of Florida*, 929 F.2d 591, 595 (11th Cir. 1991) ("'If there is no right to intervene as of right under Rule 24(a), it is wholly discretionary with the court to allow intervention under Rule 24(b) and even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied, the court may refuse to allow intervention.'"). In that regard, a district court abuses its discretion only when it makes a clear error of judgment or applies the incorrect legal standard. *Purcell v. Bank Atl. Fin. Corp.*, 85 F.3d 1508, 1513 (11th Cir. 1996). In exercising its discretion, a district court "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

### A. Timeliness

Permissive intervention under Rule 24(b)(1)(B) must be sought upon a "timely motion." Fed. R. Civ. P. 24(b)(1)(B). The Supreme Court has explained that an application to intervene must be timely and, if the motion is untimely, intervention

---

[2] In *Chiles*, the Eleventh Circuit articulated this principle when analyzing former Rule 24(b)(2), which, like Rule 24(b)(1)(B), provided, "Upon timely application anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common." 865 F.2d at 1211 n.15.

6

must be denied. *NAACP v. New York*, 413 U.S. 345, 365 (1973). As such, "the court . . . must first be satisfied as to timeliness." *Id.* Timeliness must be determined "from all the circumstances," including "the point to which the suit has progressed." *Id.* at 365–66.

Recognizing this standard, the former Fifth Circuit Court of Appeals articulated four factors to "govern the process by which the timeliness issue should be resolved." *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264–66 (5th Cir. 1977).[3] To that end, a district court must consider four factors in determining whether a motion to intervene is timely:

> (1) the length of time during which the proposed intervenor knew or reasonably should have known of the interest in the case before moving to intervene; (2) the extent of prejudice to the existing parties as a result of the proposed intervenor's failure to move for intervention as soon as it knew or reasonably should have known of its interest; (3) the extent of prejudice to the proposed intervenor if the motion is denied; and (4) the existence of unusual circumstances militating either for or against a determination that their motion was timely.

*Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1259 (11th Cir. 2002) (citing *Chiles*, 865 F.2d at 1213). "[T]imeliness is not a word of exactitude or of precisely measurable dimensions." *Id.* (internal quotations omitted). "The requirement of timeliness must have accommodating flexibility toward both the court and the litigants if it is to be successfully employed to regulate intervention in the interest of justice." *Id.* (internal quotations omitted).

---

[3] In *Bonner v. City of Prichard,* the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981. 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

7

Felix, as the party seeking to intervene, must show that his application to intervene is timely. Felix recites these factors and argues that the Motion to Intervene is timely. But Felix's analysis of these factors leaves much to be desired.

> *i. Length of Time During Which Felix Knew or Reasonably Should Have Known*

Turning to the first factor, Felix argues that only eighty days passed between oral argument on the Motion for Class Certification and his filing of the Motion to Intervene. Doc. 97 at 5–6. Felix also contends that this eighty-day period of time is "within the period of time other courts have deemed reasonable." *Id.* at 6. On this basis, Felix contends that the "initial timeliness prong" is satisfied and the Court need not conduct any further analysis. *Id.* (internal quotation marks omitted). However, under this factor, the Court must analyze the length of time during which Felix knew or reasonably should have known of his interest in the case before moving to intervene. Further, this first factor is one of several factors for the Court's consideration, not a dispositive inquiry for timeliness.

As Trulieve points out, Felix fails to offer any information or argument as to the time when he knew or reasonably should have known of his interest in the case. Instead, Felix inexplicably measures the period of time between oral argument and his filing of the Motion to Intervene and compares that period of time to periods of time "deemed reasonable." Doc. 97 at 6. Any persuasive value of this measurement of time is severely undercut by his offering of an alternate measurement of time, in which he asserts that "[i]f the Court believes the relevant date" to be the date when Trulieve filed

8

its response in opposition, then 174 days passed between Trulieve's filing of its response in opposition to the Motion for Class Certification and Felix's filing of the Motion to Intervene.[4] But the law, not the Court's belief, determines the relevant date, instructing the Court to examine the length of time during which Felix knew or reasonably should have known of his interest in the case before moving to intervene. In the absence of any information regarding Felix's knowledge, or when he reasonably should have known, of his interest in the case, the Court is left to speculate.[5] The Court will not rely upon speculation to find that this factor weighs in Felix's favor. *See*

---

[4] Felix miscalculates this period of time; 179 days passed between the two dates.

[5] The two cases relied upon by Felix do not cure this defect. In *Georgia v. United States Army Corps of Engineers*, the plaintiff argued that the proposed intervenor's motion to intervene was untimely because the proposed intervenor knew of the litigation and had copies of papers in the case since February of 2001 and did not move to intervene until August of 2001, after discovery was nearly complete. 302 F.3d at 1259. The Eleventh Circuit held that a delay of six months—from February of 2001, when the proposed intervenor purportedly knew of the litigation, to August of 2001—did not in itself constitute untimeliness. *Id.* Here, as explained above, Felix simply provides alternate dates for the Court to measure periods of time, but fails to address when he knew or reasonably should have known of his interest in the case. Further, in *Florida Pediatric Society v. Secretary of Florida Agency for Health Care Administration*, a magistrate judge recommended finding that the first factor weighed in favor of timeliness because, although Defendants argued that the proposed intervenors had not established how long they knew of their interest in the case, the proposed intervenors moved to intervene on the same day that the Court permitted six individuals to withdraw as potential class representatives and four months after Defendants first challenged the sufficiency of class representation. No. 05-23037-CIV, 2008 WL 4072805, at *4 (S.D. Fla. July 30, 2008), *report and recommendation adopted in part sub nom. Fla. Pediatric Soc'y v. Benson*, 05-23037-CIV, 2008 WL 4072605, at *1 (S.D. Fla. Aug. 28, 2008). As such, the magistrate judge found that the proposed intervenors moved "with reasonable promptness once it became apparent that the class representatives may have difficulty satisfying the requirements of Rule 23." *Id.* Here, Felix does not offer any argument regarding when it became apparent that a class representative may experience difficulty satisfying the requirements of Rule 23. He merely claims that Trulieve argues that Lyttle cannot adequately represent the class. Doc. 97 at 2. Thus, *Florida Pediatric Society*, which does not serve as binding authority in any event, is distinguishable.

*Stallworth*, 558 F.2d at 267 (finding that the district court erred in using "an unspecified time . . . rather than the time when [the appellants] knew or should have known of their interest in the action").

This failure also falls against a backdrop in which Felix previously sued PSC in connection with his application for employment with Trulieve. On October 18, 2019, approximately one month after Lyttle initiated the instant action, Felix sued PSC under the FCRA. *Felix v. Personal Security Concepts, LLC*, No. 2:19-cv-00854-SPC-MRM (M.D. Fla.), Doc. 1 at 1. There, Felix alleged, in relevant part, that he applied for employment with Trulieve, Trulieve requested PSC to provide information about him, PSC prepared and sold a consumer report about him to Trulieve, and the report contained information that was likely to have an adverse effect on his ability to obtain employment. *Id.* at ¶¶22, 25, 27, 30–33. Although the Court declines to conclude, based on the briefing before the Court, that this lawsuit against PSC demonstrates that Felix knew or reasonably should have known of his interest in the instant action at that time, Felix's failure to address the lawsuit against PSC underscores the incomplete nature of his analysis in seeking permissive intervention.

Therefore, Felix fails to demonstrate that the first factor weighs in his favor.

> ii. *Extent of Prejudice as a Result of Felix's Failure to Move*

Second, the Court must consider the extent of prejudice to the existing parties in the instant action as a result of Felix's failure to move for intervention as soon as he knew or reasonably should have known of his interest. The Court cannot adequately

assess the extent of prejudice that the existing parties may suffer as a result of Felix's failure to move for intervention at a particular time.

As a result of Felix's failure to address when he knew or reasonably should have known of his interest, both Felix and Trulieve focus on prejudice, or the lack thereof, generally. Felix simply argues that this factor is satisfied because if there was a delay, no existing party has been prejudiced. Doc. 97 at 6. To that end, he claims that if the Court grants intervention, Trulieve will need only to "locate a handful of documents" and take an additional deposition. *Id.* Trulieve, on the other hand, argues that it will suffer prejudice if the Court permits intervention. Doc. 101 at 2–3, 4, 8–10, 14. At bottom, Trulieve's prejudice argument rests upon the undue delay that will purportedly result from intervention.

However, for this factor, "the prejudice to the original parties to the litigation that is relevant to the question of timeliness is only that prejudice which would result from the would-be intervenor's failure to request intervention as soon as he knew or reasonably should have known about his interest in the action." *Stallworth*, 558 F.2d at 265. Indeed, to determine whether an application for intervention is timely under the second factor, "the relevant issue is not how much prejudice will result from allowing intervention, but rather how much prejudice would result from the would-be intervenor's failure to request intervention as soon as he knew or should have known of his interest in the case." *Id.* at 267 (holding that the district court applied an incorrect legal standard). Certainly, Rule 24(b) instructs the Court to consider whether the intervention will unduly delay or prejudice the adjudication of the original parties'

11

rights, but such consideration "is a factor which the district court must consider in exercising its discretion to permit intervention" under Rule 24(b). *Id.* at 265. Analyzing this type of prejudice in determining timeliness would result in the Court "consider[ing] the same factor twice." *Id.*

Here, Felix's general reference to prejudice without reference to when he knew or should have known of his interest in this case renders his argument for this factor incomplete and unavailing. His argument improperly focuses on prejudice to Trulieve in general, not the extent of prejudice to the original parties that results from his failure to move for intervention as soon as he knew or reasonably should have known of his interest. As such, Felix fails to demonstrate that this second factor weighs in his favor.

*iii. Extent of Prejudice to Felix if Motion to Intervene is Denied*

Third, the Court must consider the extent of prejudice to Felix if the Motion to Intervene is denied. Felix fails to address this factor directly. Instead, he argues in passing that the Court should reject any argument that he has an opportunity to file his own action if the Court denies the Motion to Intervene, reasoning that "[a]ny future § 1681b(B)(3) actions would necessarily include duplicative discovery and motion practice" because "every claim arises from the same set of core facts." Doc. 97 at 7. No further explanation or argument is offered. Thus, Felix appears to argue that this factor weighs in his favor because the Court should reject an anticipated argument from Trulieve. However, his argument does not sufficiently address any prejudice that he may suffer if the Court denies the Motion to Intervene. For example, as Trulieve points out, Felix would seemingly remain a potential member of the class if the Court

12

denies the Motion to Intervene. Doc. 101 at 11. Indeed, he seems to assume that the denial of his Motion to Intervene would necessitate the filing of a new action. Moreover, although Felix claims that he moves to intervene to "protect the interests of the putative class," he does not argue that he seeks intervention to protect his own rights which would somehow be prejudiced upon a denial of the Motion to Intervene. Doc. 97 at 2. Therefore, Felix does not sufficiently demonstrate that this factor weighs in his favor.

*iv. Unusual Circumstances Militating For or Against Timeliness*

Fourth, the Court must consider the existence of any unusual circumstances militating either for or against a determination that the Motion to Intervene was timely. Felix argues that this factor weighs against a finding of untimeliness because he "had no reason to know this action existed, as no notice has been sent to the putative class." Doc. 97 at 7. Felix does not explain, with authority or otherwise, why this purported lack of notice constitutes an unusual circumstance militating against a finding of untimeliness. Thus, this argument is unavailing.

Trulieve argues that unusual circumstances militating "against intervention" exist because "Trulieve interviewed and hired Mr. Felix and no adverse action was taken against him." Doc. 101 at 11–12. Trulieve contends that the provided declaration of Zachary Korbin contradicts Felix's allegations in the Proposed Complaint that he did not commence his career with Trulieve as scheduled. Doc. 101 at 12. The Motion to Intervene, Trulieve argues, serves as nothing more than a last-

13

minute attempt to atone for poor vetting of Lyttle to serve as class representative before the Court rules on the Motion for Class Certification.

These arguments are also unavailing. This factor focuses on the existence of unusual circumstances militating for or against the timeliness of a motion to intervene, not for or against intervention. Regardless, even when construing Trulieve's arguments as geared towards the timeliness or untimeliness of the Motion to Intervene, Trulieve does not demonstrate that these circumstances constitute unusual circumstances militating in favor or against a determination that the Motion to Intervene was timely. To the extent that Trulieve challenges Felix's allegations in the Proposed Complaint, the Court addresses that challenge in its discussion of the existence of a common question of law or fact. And the Court must be mindful to separate class certification arguments from permissive intervention arguments. *See Krinsk v. Suntrust Bank*, No. 8:09-cv-909-T-27EAJ, 2011 WL 13143905, at *1 (M.D. Fla. Nov. 30, 2011). Therefore, unusual circumstances militating either for or against a determination that the Motion to Intervene was timely do not exist.

Therefore, upon consideration of the relevant factors, and mindful that timeliness is not an exacting standard, Felix fails to demonstrate that the Motion to Intervene is timely. As such, the Motion to Intervene is due to be denied on this basis.

### B. Common Questions of Law or Fact

Felix also must demonstrate that his claim and the instant action have a question of law or fact in common. Fed. R. Civ. P. 24(b)(1)(B); *Chiles*, 865 F.2d at 1213. Courts have construed this portion of Rule 24(b) liberally, and the Supreme

14

Court has stated that it "'plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation.'" *In re Estelle*, 516 F.2d 480, 485 (5th Cir. 1975) (quoting *SEC v. U.S. Realty & Improvement Co.*, 310 U.S. 434, 459 (1940)). The claims need not be identical; as the language of Rule 24(b)(1)(B) indicates, the claims must simply share a common question of law or fact. *Krinsk*, 2011 WL 13143905, at *2.

Although Felix fails to demonstrate that the Motion to Intervene is timely, the Court will consider this component of the Rule 24(b) analysis. In the Proposed Complaint, Lyttle and Felix sue Trulieve under 15 U.S.C. § 1681b(b)(3)(A)—the same provision of the FCRA that Lyttle alleges Trulieve violated in the Complaint—on behalf of a putative class, the definition of which is identical to the definition for the "Adverse Action Class" in the Complaint. Doc. 97-2 ¶¶5–6, 40, 51–53. The allegations in the Proposed Complaint state that Trulieve made an offer of employment to Felix after he applied for employment with Trulieve in August of 2019. *Id.* at ¶¶29–30. After Trulieve obtained Felix's consumer report from PSC in September of 2019, which purportedly contained improper information, a Trulieve representative informed Felix that Trulieve would not hire him as a result of "criminal information contained in his background check." *Id.* at ¶¶32, 34. Trulieve allegedly failed to provide Felix with notice of its intent to rescind its offer of employment, a copy of his background, or a summary of his rights before informing him that he was ineligible for employment. *Id.* at ¶36. As such, according to the Proposed Complaint, Felix was not hired "as scheduled" due to his consumer report. *Id.* at ¶37. Felix was allegedly deprived of the

opportunity to "timely commence his career and begin earning an income." *Id.* at ¶38. Consequently, Lyttle and Felix allege that Trulieve violated the FCRA by failing to provide them and other Adverse Action Class members with pre-adverse action notice, summaries of their rights, and copies of their consumer reports before taking adverse action. *Id.* at ¶51.

    Felix demonstrates that his claim and the instant action have a question of law or fact in common. As Felix points out, the allegations in the Proposed Complaint, similar to those of Lyttle in the Complaint, state that Trulieve took an adverse action against Felix based in whole or in part on his consumer report without first providing him with pre-adverse action notice under § 1681b(b)(3)(A). Both the Complaint and the Proposed Complaint allege that Trulieve did not supply pre-adverse action notice, a copy of the consumer report, or a summary of rights in violation of § 1681b(b)(3)(A). Lyttle's alleged harm and Felix's alleged harm each arise from Trulieve's background screening policies and procedures. Although the circumstances giving rise to Felix's alleged harm may not be identical to those circumstances giving rise to Lyttle's alleged harm, the claims must simply share a question of law or fact. They do. Trulieve's efforts to distinguish Felix's alleged harm so as to argue that a common question of law or fact does not exist are unavailing.[6]

---

[6] Among other arguments, Trulieve asserts that a "cognizable nexus between the information in any background check of Mr. Felix and some alleged 'adverse action'" does not exist because, based on the provided declaration of Zachary Korbin, Felix "applied to Trulieve, was interviewed, and commenced work for Trulieve within a two-weeks span in September of 2019. Doc. 101 at 3–4, 13. According to Korbin's declaration, Felix applied for employment with Trulieve on or about September 4, 2019, and he began working for Trulieve

16

Therefore, Felix demonstrates that his claim and the instant action have a question of law or fact in common.

### C. Undue Delay or Prejudice to Original Parties

Although Felix's claim and the instant action have a question of law or fact in common, Felix fails to demonstrate that the Motion to Intervene is timely. But even if both of these requirements were satisfied, the Court has the discretion to deny intervention. "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Here, permitting Felix to intervene would also unduly delay or prejudice the adjudication of the original parties' rights.

As Trulieve highlights, allowing intervention would "re-open all facets" of this nearly two year-old action, including the pleading stage, discovery, and class certification motion practice. Doc. 101 at 2, 14. Lyttle initiated this action on September 17, 2019. The parties conducted an early mediation, Docs. 33, 34, and Trulieve thereafter answered the Complaint on May 5, 2020, Doc. 41. Allowing Felix to intervene, however, would return the action to this early stage of the litigation. Trulieve would again need to answer or respond to the operative pleading. Also,

---

on or about September 18, 2019. Doc. 102 at 3–4. Thus, Trulieve relies upon the declaration to contradict the allegations in the Proposed Complaint and demonstrate dissimilarity between the claims. But, again, for this Rule 24(b)(1)(B) analysis, Felix's claim need only share with the instant action a common question or law or fact. The claims do not need to be identical. The representations in the declaration, which arise from Trulieve's "limited investigation to date," do not swing this portion of the Rule 24(b)(1)(B) analysis in Trulieve's favor. *Id.* at 3.

perhaps as the result of discovery, some of the allegations in the Proposed Complaint for Lyttle differ slightly from those allegations in the Complaint.[7]

The re-opening of discovery would further compound the delay. Discovery closed on April 2, 2021, over one month before Felix moved to intervene, with the exception of a short thirty-day extension of time from the date of the Court's ruling on the Motion for Class Certification. Doc. 40 at 1; Doc. 95. Felix asserts that intervention will require Trulieve only to "locate a handful of documents" and take an additional deposition, but he fails to explain why allowing him, as a new party to the litigation, to intervene would result in additional discovery limited to only locating some documents and taking one deposition. Doc. 97 at 6. Notwithstanding the recognition that Felix's claim and the instant action have a question of law or fact in common, the addition of Felix would result in the injection of new facts—those pertaining to Felix's application for employment—into this action, which could easily result in discovery extending beyond merely locating some documents and taking one deposition. For example, the parties may seek to depose Felix and a representative of Trulieve regarding Felix's application for employment with Trulieve. As such, Felix's argument regarding discovery is unavailing, and the Court is not persuaded that discovery would be as limited as Felix suggests.

---

[7] For example, the Proposed Complaint alleges that a representative of Trulieve "admitted (six months after rejecting Plaintiff Lyttle's employment), that Trulieve had made an error and that he was eligible for employment," Doc. 97-2 ¶27, whereas the Complaint merely alleges that this representative "admitted Trulieve mistakenly denied [Lyttle] employment in April 2019 based on his consumer report," Doc. 1 ¶65.

Intervention would also prompt another round of class certification briefing, thereby further delaying the action. Lyttle filed the Motion for Class Certification on September 29, 2020, and briefing on class certification closed over five months before Felix moved to intervene. The Court thereafter heard oral argument on the Motion for Class Certification and had taken the Motion for Class Certification under advisement when Felix moved to intervene. Similarly, Felix moved to intervene three days before the dispositive motion deadline. *See* Doc. 40 at 1. Trulieve has since moved for summary judgment. Doc. 98. Permitting Felix to intervene would necessarily result in an extension of the dispositive motion deadline until some time after Trulieve responded to the new complaint and the parties completed re-opened discovery.

While the Court recognizes that "[e]very proposed intervention necessarily involves some degree of delay," *Worlds*, 929 F.2d at 595, permitting Felix to intervene here, in light of the present posture of this action, would unduly delay the proceedings. This unnecessary delay would prejudice, at minimum, the rights of Trulieve by requiring Trulieve to devote additional resources and expenses towards litigation essentially restarted from the beginning at a time when discovery has closed, mediation has been conducted, class certification briefing is complete, a motion for summary judgment pends, and the final pretrial conference is three months away. Even if some of the current trial-related deadlines are extended, any delay resulting from those extensions would be less in duration than the delay resulting from permitting Felix to intervene.

Therefore, permitting Felix to intervene would also result in undue delay or prejudice to the adjudication of the original parties' rights, even if requirements of permissive intervention are satisfied. As such, the Court, in its discretion, also denies the Motion to Intervene on this basis.

### IV. CONCLUSION

Felix's claim shares a common question of law or fact with the instant action, but he fails to demonstrate that his request to intervene is timely. Further, permitting him to intervene would result in undue delay or prejudice to the adjudication of the original parties' rights. Therefore, the Motion to Intervene will be denied.

Accordingly, it is hereby **ORDERED**:

1. Hasani Felix's Opposed Motion to Intervene for the Purpose of Serving as Class Representative (Doc. 97) is **DENIED**.

2. The Clerk is directed to terminate Hasani Felix as a party in this action.

**DONE AND ORDERED** in Tampa, Florida on June 10, 2021.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any