**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

LOGAN LYTTLE, on his own behalf
and on behalf of all similarly situated
individuals,

      Plaintiff,

v.                                Case No: 8:19-cv-2313-CEH-TGW

TRULIEVE, INC., a Florida Profit
Corporation,

      Defendant.

_____/

**O R D E R**

This matter comes before the Court upon Plaintiff's Motion for Class Certification (the "Motion for Class Certification") (Doc. 61), Defendant's Response in Opposition to Plaintiff's Motion for Class Certification (Doc. 70), and Plaintiff's Reply to Defendant's Response in Opposition to Plaintiff's Motion for Class Certification (Doc. 76). The Court, having considered oral argument, the parties' submissions, and being fully advised in the premises, will grant-in-part and deny-in-part the Motion for Class Certification.

## I.    BACKGROUND

Logan Lyttle, on behalf of himself and all others similarly situated, brings this Fair Credit Reporting Act action against Trulieve, Inc. Doc. 1 ¶¶68, 72–75, 103–113.

Lyttle's complaint contains the following factual allegations. Trulieve conducts background checks on job applicants as part of a standard screening process. *Id.* at ¶24.

Trulieve also occasionally conducts background checks on employees during the course of their employment. *Id.* In or about April of 2019, Lyttle applied for employment with Trulieve. *Id.* at ¶51. Trulieve procured Lyttle's consumer report from Personal Security Concepts, LLC.[1] *Id.* at ¶52. Lyttle did not know the nature or scope of Trulieve's investigation into his background. *Id.* at ¶54.

Trulieve conditionally offered employment to Lyttle. *Id.* at ¶57. However, based on the contents of the consumer report, Trulieve rescinded the job offer and rejected Lyttle's employment application. *Id.* at ¶58. Before rescinding the job offer, Trulieve did not provide Lyttle with notice of its intent to rescind the employment offer, a copy of Lyttle's background check, or a summary of his rights. *Id.* at ¶59.

After Trulieve rejected Lyttle's employment application, Lyttle became concerned about the information contained in his consumer report, whether the report was accurate, and the impact of the report on his future employment prospects. *Id.* at ¶60. The retail regional human resources manager for Trulieve admitted that Trulieve had mistakenly denied employment to Lyttle in April of 2019 based on his consumer report. *Id.* at ¶65. If Trulieve had provided Lyttle with pre-adverse action notice, a copy of his consumer report, and a summary of rights in April of 2019, Lyttle could have clarified any confusion and started his career at Trulieve. *Id.* at ¶66. Trulieve did not afford Lyttle an opportunity to address any concerns regarding his consumer report or state his case before rejecting his employment application. *Id.*

---

[1] Lyttle previously brought claims against Personal Security Concepts in this action, too, but the Court dismissed those claims, with prejudice, in June of 2020. Doc. 53 at 1.

Lyttle brings one claim against Trulieve under 15 U.S.C. § 1681b(b)(3)(A) on behalf of himself and a class labeled as the "Adverse Action Class," which consists of

> [a]ll Trulieve applicants and employees in the United States against whom adverse employment action was taken, based, in whole or in part, on information contained in a consumer report obtained within five years preceding the filing of this action through the date of final judgment, who were not provided notice, a copy of their report or summary of rights pursuant to § 1681b(b)(3)(A).

*Id.* at ¶¶11, 14, 19, 68, 103–105, 112–113.

Lyttle alleges that Trulieve violated 15 U.S.C. § 1681b(b)(3)(A) by failing to provide him and other Adverse Action Class members with pre-adverse action notice, a summary of their FCRA rights, and a copy of their consumer report prior to taking adverse action. *Id.* at ¶105. Lyttle further alleges that the violations were willful and that Trulieve "acted in deliberate or reckless disregard of its obligations" and the rights of Lyttle and other Adverse Action Class members under 15 U.S.C. § 1681b(b)(3)(A). *Id.* at ¶106.

The Court heard oral argument on the Motion for Class Certification, Doc. 83 at 1, but deferred ruling because Trulieve indicated an intent to challenge subject matter jurisdiction, Doc. 84. After the parties resolved that issue, the Court took the Motion for Class Certification under advisement, only for an individual to move for permissive intervention under Rule 24(b) for the purpose of serving as class representative. Doc. 97 at 1. The Court denied that request. Doc. 104 at 20. The Motion for Class Certification is now ripe for the Court's review.

## II.    LEGAL STANDARD

Decisions about class certification rest with the sound discretion of the district court. *Armstrong v. Martin Marietta Corp.*, 138 F.3d 1374, 1386 (11th Cir. 1998). A district court has broad discretion in determining whether to certify a class. *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir. 1992). A class action may be maintained only when it satisfies all of the requirements of Federal Rule of Civil Procedure 23(a) and at least one of the requirements of Rule 23(b). *See Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1321 (11th Cir. 2008). The party seeking class certification carries the burden of proof and, if doubts exist regarding whether the movant satisfies that standard, then the movant fails to carry its burden. *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1233 (11th Cir. 2016).

As a threshold issue, a plaintiff must demonstrate that the proposed class is "adequately defined and clearly ascertainable." *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012). A plaintiff seeking to maintain the class action must affirmatively demonstrate his compliance with Rule 23. *Id.* The plaintiff must be prepared to prove that there are "*in fact* sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (emphasis in original). Rule 23 "establishes the legal roadmap courts must follow when determining whether class certification is appropriate." *Valley Drug Co. v.*

*Geneva Pharm., Inc.*, 350 F.3d 1181, 1187 (11th Cir. 2003). Under Rule 23, a court may certify a class only if:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

## III.   ANALYSIS

Before certifying a class, a district court must determine that "at least one named class representative has Article III standing to raise each class subclaim." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 (11th Cir. 2000). Lyttle has established standing.[2] As such, the Court must examine ascertainability, the

---

[2] The "irreducible minimum" of standing consists of three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (internal quotation marks omitted). In simpler terms, a plaintiff must show that the defendant harmed the plaintiff and that a judicial decision can either eliminate that harm or compensate him for it. *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924 (11th Cir. 2020) (en banc). Here, Lyttle has established standing. He alleges that Trulieve rescinded the job offer based on the report's contents and failed to provide him with notice of its intent, a copy of the background check, or a summary of his rights before rejecting his application. Doc. 1 ¶¶58–59. According to Lyttle, Trulieve admitted that it mistakenly denied him employment based on the report and, if Trulieve had provided him with the requisite notice before taking adverse action against him, he could have clarified any confusion and started his career at Trulieve. *Id.* at ¶¶65–66, 110. Lyttle also alleges that he was denied the opportunity to determine the veracity of the information in the report and understand how it may affect future efforts to obtain employment. *Id.* at ¶110. Lyttle further supports these allegations in his declaration. Doc. 61-1 at 3–4. Trulieve has recognized that

requirements under Rule 23(a), and the requirements under Rule 23(b). As explained below, Lyttle satisfies these requirements.

### A. Adequately Defined and Clearly Ascertainable

Ascertainability serves as an implied prerequisite of Rule 23. *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302 (11th Cir. 2021). "Class representatives bear the burden of establishing that their proposed class is adequately defined and clearly ascertainable, and they must satisfy this requirement before the district court can consider whether the class satisfies the enumerated prerequisites of Rule 23(a)." *Id.* The Eleventh Circuit has traditionally collapsed class definition and ascertainability into one inquiry. *Id.* To that end, "a proposed class is ascertainable if it is adequately defined such that its membership is capable of determination." *Id.* at 1304. And "membership can be capable of determination without being capable of *convenient* determination." *Id.* (emphasis in original). *Id.* at 1303. On the other hand, a class is inadequately defined when it is defined through vague or subjective criteria. *Id.* at 1301. When a proposed class lacks an adequate definition, the district court cannot ascertain who belongs in that proposed class. *Id.* at 1302. Neither this analysis nor the remainder of the Rule 23 analysis requires "administrative feasibility"; if the action involves a proposed Rule 23(b)(3) class, the district court may consider administrative feasibility as part of the manageability criterion under Rule 23(b)(3)(D). *Id.* at 1304.

---

Lyttle plausibly alleges harm under the standing analysis and does not challenge standing. Doc. 88 at 16.

The Adverse Action Class is adequately defined such that its membership is capable of determination. The proposed definition covers all Trulieve applicants and employees in the United States against whom adverse action was taken, based, in whole or in part, on information within a consumer report obtained five years before Lyttle filed this action through the date of the final judgment, who were not provided notice, a copy of their report, or summary of rights under § 1681b(b)(3)(A). This language does not employ vague or subjective criteria. Portions of the definition utilize terms or language from § 1681b(b)(3)(A), such as the references to a copy of the report and summary of rights. The definition does not demand speculation or guesswork. Trulieve does not challenge class certification on this ground. The Adverse Action Class is adequately defined and clearly ascertainable.[3]

### B. Rule 23(a) Requirements

Because the Adverse Action Class is adequately defined and clearly ascertainable, the Court will now address the prerequisites to class certification under Rule 23(a). *Cherry*, 986 F.3d at 1302. Rule 23(a) requires the Court to examine: (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy. *Hines v. Widnall*, 334 F.3d 1253, 1255–56 (11th Cir. 2003). Lyttle satisfies the requirements of Rule 23(a).

#### i. *Numerosity and Impracticability of Joinder*

---

[3] As discussed in more detail below, the Court will modify the Adverse Action Class's definition to provide for a two-year class period. This modification does not change the Court's conclusion here.

Under Rule 23(a)(1), the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Generally, a putative class must include more than forty members. *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986). Although a plaintiff need not show the precise number of members in the class, the plaintiff "still bears the burden of making some showing, affording the district court the means to make a supported factual finding, that the class actually certified meets the numerosity requirement." *Vega v. T-Mobile, USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009) (original emphasis removed).

Lyttle contends that the Adverse Action Class is sufficiently numerous. Doc. 61 at 11. Trulieve does not challenge numerosity. In support of his numerosity argument, Lyttle highlights that Trulieve denied employment to 1,047 applicants based upon their criminal histories. *Id.* Indeed, one of Trulieve's interrogatory responses to Lyttle's inquiry into the number of members in the Adverse Action Class indicates that "approximately 1,047 individuals were denied employment due to a criminal record during the two year period prior to the filing of the Complaint." Doc. 61-2 at 17. Although the interrogatory response relates to a two-year period, instead of the five-year period in the definition for the Adverse Action Class, and does not explicitly focus upon those individuals who did not receive notice under § 1681b(b)(3)(A), the response serves as a good evidentiary indicator that the Adverse Action Class is sufficiently numerous.[4] It demonstrates that over 1,000 individuals were denied employment as a

---

[4] And as discussed in more detail below, the Court will modify the Adverse Action Class's definition to provide for a two-year class period.

result of a purported criminal history, similar to Lyttle. *See* Doc. 61-1 at 3; Doc. 70-2 at 44–54. Lyttle need not show the precise number of individuals in the Adverse Action Class. Thus, Lyttle satisfies numerosity under Rule 23(a).

### ii. *Common Questions of Law or Fact*

Under Rule 23(a)(2), "questions of law or fact common to the class" must exist. Fed. R. Civ. P. 23(a)(2). "This part of the rule does not require that all the questions of law and fact raised by the dispute be common or that the common questions of law or fact predominate over individual issues." *Vega*, 564 F.3d at 1268 (internal citation and quotation marks omitted). This burden is "relatively light." *Id.* "[A] class action must involve issues that are susceptible to class-wide proof." *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001). Commonality, like typicality, focuses "on whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members." *Prado-Steiman*, 221 F.3d at 1278.

A sufficient nexus exists here. Lyttle contends that Trulieve failed to provide him with notice in accordance with § 1681b(b)(3)(A). Specifically, Lyttle alleges that Trulieve failed to provide him with "notice of its intent to rescind its offer of employment, a copy of his background check or a summary of his rights before rescinding the offer." Doc. 1 ¶59. The Adverse Action Class includes those individuals who, like Lyttle, allegedly did not receive notice in accordance with § 1681b(b)(3)(A) from Trulieve. Thus, whether Trulieve provided the information required under § 1681b(b)(3)(A) before taking adverse employment action is a factual question common to Lyttle and individual class members. Relatedly, whether Trulieve willfully violated

the FCRA is another question common to Lyttle and the individual class members. The Adverse Action Class satisfies the commonality requirement under Rule 23(a).

### iii.   Typicality

Next, the claims or defenses of the representative parties must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3)." *Vega*, 564 F.3d at 1275 (internal quotation marks omitted). The typicality analysis "measures whether a sufficient nexus exists between the claims of the named representatives and those of the class at large." *Id.* (internal quotation marks omitted). Unlike commonality, which traditionally refers to a class's group characteristics as a whole, typicality refers to the named plaintiff's individual characteristics in relation to the class. *Prado-Steiman*, 221 F.3d at 1279. Even if the fact patterns are unique to each claim, if the class representative and class members experienced the same unlawful conduct, the typicality requirement will be satisfied. *Agan v. Katzman & Korr, P.A.*, 222 F.R.D. 692, 698 (S.D. Fla. 2004).

Here, Lyttle's claim against Trulieve is typical of the claims of the class members. Lyttle contends that Trulieve did not provide him notice in accordance with § 1681b(b)(3)(A) before taking adverse action based upon his report. The claims of the members of the Adverse Action Class, as defined, similarly pertain to those employees and applicants against whom Trulieve took adverse action based upon a report without providing notice in accordance with § 1681b(b)(3)(A). Thus, Lyttle and the members

of the Adverse Action Class experienced the same unlawful conduct for purposes of typicality under Rule 23(a).

### iv.   Adequacy of Protection of Class Interests

The final element of the Rule 23(a) analysis—adequacy—requires the representative party to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This adequacy-of-representation requirement, which serves to uncover any conflict of interest that the named parties may have with the class they represent, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997), contains two separate inquiries: "(1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action," *Valley Drug*, 350 F.3d at 1189 (internal quotation marks omitted). "If substantial conflicts of interest are determined to exist among a class, class certification is inappropriate." *Id.* But minor conflicts alone will not defeat class certification; "the conflict must be a 'fundamental' one going to specific issues in controversy." *Id.* The Court also must consider competency and conflicts of class counsel. *Amchem Prods.*, 521 U.S. at 626 n.20.

Lyttle contends that he has represented the Adverse Action Class's interests and has no conflicts with, or interests adverse or agnostic to, members of the Adverse Action Class. Doc. 61 at 15. Citing to his declaration, Lyttle describes his commitment to the Adverse Action Class as "beyond reproach." *Id.* Among other representations, Lyttle states in his declaration that: (1) he understands that he has certain duties and responsibilities as class representative; (2) he believes that he has fairly represented the

11

interests of the class members during the litigation; (3) he understands that, as class representative, he assumed a fiduciary role and agreed to (i) consider his own interests and, in some instances, place the interests of the Adverse Action Class before his own interests; (ii) actively participate in the litigation, as necessary; and (iii) "champion many other people with similar claims and injuries"; (4) he desires and intends to prosecute the claim; (5) his interests are "not inconsistent" with those of any member of the Adverse Action Class; (6) he has considered the interests of the Adverse Action Class and has put those interests before his interests; and (7) he has participated in this litigation. Doc. 61-1 at 4–5. Finally, relying upon declarations from his attorneys, Lyttle asserts that his attorneys possess extensive experience litigating class actions and employment law claims. Doc. 61 at 15.

But Trulieve attacks Lyttle's adequacy on numerous grounds. Doc. 70 at 6–11. Seeking to alleviate any concerns, Lyttle devotes much of his reply to countering Trulieve's adequacy attacks. Doc. 76 at 1–5, 7. The Court will address each of these attacks. As explained below, Lyttle has carried his burden of demonstrating adequacy.

### 1. *Credibility and Conflicting Statements*

First, Trulieve argues that Lyttle has demonstrated "serious credibility concerns that will dominate trial and prejudice the absent class." Doc. 70 at 6. Trulieve highlights that Lyttle admitted to lying under oath and offered numerous false statements during his deposition. *Id.* When asked during his deposition if he ever met one of his attorneys in person, Lyttle initially described a random encounter between him and his attorney, in which he "just happened to bump into" his attorney at a

12

restaurant. Doc. 70 at 114:4–20, 115:1–3. According to Lyttle, he approached his attorney, told his attorney that he looked familiar, inquired about his attorney's name, and introduced himself. *Id.* at 115:20–25, 116:1–7, 117:20–25, 118:1–7. Lyttle stated this brief encounter was unrelated to the litigation. *Id.* at 123:6–9, 22–25, 124:1–4.

After the deposition lunch break, Lyttle advised that he wanted to "amend [his] testimony regarding [his] preparation for the deposition." *Id.* at 144:17–19. According to Lyttle, contrary to his prior testimony, he had met his attorney at the restaurant to review the case and prepare for the deposition. *Id.* at 146:4–14. He sought to correct this testimony to "clear the air" and ensure "that everything that did happen" was "as correct as it can be." *Id.* at 149:19–25, 150:1–5. Lyttle stated that he had lied because he "got quite a bit nervous and spooked at the time, and once [he] started talking, [he] couldn't stop." *Id.* at 149:19–25. When asked how anyone could have confidence that he would not lie again during the litigation, Lyttle stated that he would "need to be more conscious" about his anxiety and, if possible, "take a break during that time or [something] of that nature." *Id.* at 157:4–14. He claimed that he would have "no problem" answering questions later in the litigation, even if he needed "like 5 [or] 10 seconds to breath" and "recenter" himself. *Id.* at 221:3–11.

Relatedly, Trulieve claims that "numerous conflicting statements" exist between Lyttle's deposition testimony and his declaration, which predates his deposition. Doc. 70 at 6–7. For example, although Lyttle acknowledges in his declaration that three attorneys represented him, Doc. 61-1 at 2, he did not recognize the names of two of his attorneys during his deposition, Doc. 70-1 at 127:25, 128:1–9.

And although Lyttle states in his declaration that he has agreed to assume a fiduciary role, Doc. 61-1 at 4, he did not understand the meaning of the word "fiduciary" during his deposition, Doc. 70-1 at 198:16–25, 199:1–7. Trulieve also objects to Lyttle's acknowledgment in his declaration that he has agreed to place the Adverse Action Class's interests ahead of his interests, Doc. 61-1 at 4, considering that he agreed to settle the claims against Personal Security Concepts, Doc. 70 at 7.

Neither Lyttle's initially false testimony nor the identified contradictions between his declaration and his deposition defeat Lyttle's adequacy. Turning first to the false testimony, as highlighted above, the Court must determine whether any substantial conflicts of interest—not minor conflicts alone—exist. The conflict must be a fundamental conflict going to specific issues in controversy. Lyttle's false deposition testimony was limited to a meeting with his attorney in preparation for his deposition, not any of the specific issues in controversy. Lyttle's fabricated testimony, which he later corrected on his own accord, was unrelated to Trulieve's FCRA violations. For example, Lyttle did not lie about applying for employment with Trulieve or receiving notice under § 1681b(b)(3)(A) from Trulieve before Trulieve took adverse action. Trulieve's cited district court cases here are distinguishable.[5] Similarly, the purportedly

---

[5] For example, in *Pines Nursing Home (77), Inc. v. Rehabcare Group, Inc.*, the court expressed concerns about the plaintiff's credibility and identified reasons that the plaintiff would be unable to fulfill its fiduciary role of class representative and sufficiently defend the interests of the proposed class: (1) the plaintiff's existence was threatened; (2) the two individuals who jointly or independently owned the plaintiff were defendants in criminal actions for Medicaid fraud that was allegedly perpetrated by the plaintiff at their direction; and (3) witnesses for the plaintiff offered evasive and inconsistent deposition testimony on issues material to the case, including whether the plaintiff's fax number was listed with the Florida Health Care

inconsistent statements do not defeat adequacy. Again, the relevant inquiry looks for the existence of a fundamental conflict going to specific issues in controversy. But Trulieve offers these purported inconsistencies as a means of attacking Lyttle's credibility.[6] Although Lyttle's credibility is relevant, any inconsistencies between the declaration and the deposition testimony do not rise to the level of rendering Lyttle an inadequate representative. Trulieve fails to link these statements to specific issues in controversy. To the extent that these attacks also tie in to Trulieve's other adequacy arguments, such as Lyttle's involvement in the litigation and his settlement with Personal Security Concepts, the Court addresses those arguments below. Thus, contrary to Trulieve's assertion, Lyttle did not demonstrate credibility concerns that will dominate trial or prejudice members of the Adverse Action Class.

---

Association. No. 1:14-cv-20039-UU, 2014 WL 12531512, at *3–4 (S.D. Fla. June 20, 2014). Similarly, in *Hall v. National Recovery Systems, Inc.*, the court held that the plaintiff could not adequately represent the class because evidence suggested that he lacked credibility. No. 8:96-cv-132-EAK, 1996 WL 467512, at *5 (M.D. Fla. Aug. 9, 1996). The court based this conclusion upon: (1) the defendant's evidence that the plaintiff had been convicted of impeachable crimes: (2) the defendant's evidence that the plaintiff had been adjudicated guilty with respect to worthless checks, despite the plaintiff's testimony that the State Attorney's office had never contacted him; and (3) the defendant's assertions that the plaintiff had filed for bankruptcy, his driver's license was suspended, and three warrants had been issued for his arrest. *Id.* at *5. The court explained that the plaintiff's impeachable convictions and prior inconsistent statements would render him incredible at trial, which would materially prejudice other class members. *Id.* at *6.

[6] During oral argument, Trulieve argued that other inconsistencies between the declaration and Lyttle's deposition testimony exist concerning the disclosure form and Trulieve's investigation into Lyttle's background. The cited testimony pertains to claims no longer before the Court, and Trulieve's arguments do not persuade the Court that Lyttle cannot adequately represent the Adverse Action Class. Trulieve also claimed during oral argument that discrepancies between the declaration and the deposition testimony revealed unique defenses that would apply to Lyttle, yet Trulieve failed to articulate those defenses.

### 2. Participation and Familiarity

Next, Trulieve argues that Lyttle is an inadequate representative because he has not actively participated in the litigation. Doc. 70 at 7. Trulieve contends that Lyttle's lack of knowledge about the proceedings and his admission that he has ceded control of the litigation to counsel demonstrates his lack of active participation. *Id.* at 7–8. Trulieve highlights several portions of Lyttle's deposition testimony. *Id.* at 8. Lyttle claimed during his deposition that he does not seek monetary damages in this action, Doc. 70-1 at 187:15–25, 188:1–6, yet he seeks, among other forms of relief, statutory damages in the complaint, Doc. 1 ¶112. Lyttle acknowledged that he did not attend mediation, and he could not recall whether Trulieve offered to settle at mediation or whether his attorney offered to settle at mediation. Doc. 70-1 at 280:1–8, 24–25, 281:1–2. Lyttle was unaware of whether a class representative maintains a duty to represent the interests of absent class members in negotiating a resolution of the action. *Id.* at 181:8–12. And Lyttle did not recognize the names of two of his attorneys. *Id.* at 128:2–9. As such, Trulieve contends that Lyttle is not actively involved in the litigation, but rather a "passive strawman used by his attorneys." Doc. 70 at 8.

Trulieve's argument here falls short. "It is well-settled that it is not necessary for named class representatives to be knowledgeable, intelligent or have a firm understanding of the legal or factual basis on which the case rests in order to maintain a class action." *Powers v. Gov't Emps. Ins. Co.*, 192 F.R.D. 313, 317 (S.D. Fla. 1998). *See also Collins v. Quincy Bioscience, LLC*, No. 19-CV-22864-COOKE/GOODMAN, 2020 WL 3268340, at *26 (S.D. Fla. Mar. 19, 2020) (stating that a party who is unfamiliar

with the basic elements of his or her claims is an inadequate representative for the class because "there is no sense that there is an actual party behind counsel's prosecution of the action"). Merely relying on counsel to prosecute an action does not render a plaintiff inadequate. *City of Sunrise Gen. Emps.' Ret. Plan v. FleetCor Techs., Inc.*, No. 1:17-cv-2207-LMM, 2019 WL 3449671, at *6 (N.D. Ga. July 17, 2019).

A review of Lyttle's entire deposition testimony, rather than only Trulieve's selected portions thereof, demonstrates that he has actively participated in the litigation. As of his deposition, Lyttle estimated that he had spent approximately 60 hours working on the case. Doc. 70-1 at 166:24–25, 167:1–6. This activity included reviewing various documents, such as the complaint before it was filed, his declaration, communications from counsel, and information about Trulieve. *Id.* at 162:11–19, 163:5–7, 167:7–12, 227:21–25, 228:1. Other activity includes deposition preparation, providing information to counsel, and conducting online searches.[7] *Id.* at 151:5–22, 167:7–12, 265:21–25, 266:1–8. He has consistently communicated with counsel. *Id.* at 126:2–10, 132:9–12. He also provided the information included in his declaration to counsel. *Id.* at 226:21–25, 227:1–5. The testimony shows that Lyttle understands the nature of his claim, too. For example, he testified to his understanding that Trulieve should have provided him with a copy of his background check, informed him of the contents of the background check, and provided him with the opportunity

---

[7] Additionally, one of Lyttle's attorneys represents that Lyttle has participated in the litigation from the onset, including by reviewing pertinent documentation and sharing his experiences while applying for employment with Trulieve. Doc. 61-4 at 3.

to dispute the background check. *Id.* at 169:22–25, 170:1–8. He stated that Trulieve should have provided more information than the amount of information he received and that he was "cut off" from the "rights associated with" his personal information. *Id.* at 170:1–8. Lyttle also frequently recognized the Adverse Action Class's interests. For example, he acknowledged that he "speak[s] on behalf of other people" who have "essentially been treated the same way" as him and that "[i]t's not about [him] in the . . . long run." *Id.* at 180:13–23, 184:10–21.

Although Trulieve focuses on Lyttle's unfamiliarity with certain aspects of the litigation, such as his request for damages and whether a duty exists to absent class members in negotiating a resolution, the law does not require Lyttle to transform into an FCRA expert or an attorney in order for him to serve as class representative. As highlighted above, Lyttle demonstrated a familiarity with the action and the role of class representative. Contrary to Trulieve's contention, the cited instances of Lyttle's unfamiliarity do not demonstrate that Lyttle serves as a naïve strawman for his counsel to further the claim.[8] As such, this argument fails.

### 3. Settlement with Personal Security Concepts

---

[8] During oral argument, Lyttle's counsel explained that Lyttle did not attend mediation because counsel did not think Lyttle's attendance was necessary. The Court highlighted the Case Management and Scheduling Order's requirement for Lyttle to attend mediation. Lyttle's counsel conceded that directing Lyttle not to attend mediation was "perhaps . . . our mistake." Counsel's mistake does not defeat Lyttle's adequacy, nor, in light of the analysis above, does Lyttle's absence from mediation render him an inadequate representative.

Trulieve also argues that a "fundamental conflict of interest exists" between Lyttle and members of the Adverse Action Class because Lyttle settled his claims "on an individual basis" with Personal Security Concepts. Doc. 70 at 9 (internal quotation marks omitted). According to Trulieve, Lyttle "leveraged the potential class claims to his own benefit at the expense of the absent class members." *Id.* at 10. Trulieve contends that Lyttle's settlement with Personal Security Concepts, in which Lyttle received approximately $10,000, "harmed the interests of the absent class members by releasing all claims" against Personal Security Concepts and dismissing Personal Security Concepts from this action. *Id.* Trulieve claims that the terms of the settlement agreement with Personal Security Concepts also cast doubt on the ability of Lyttle and his counsel to adequately represent the class. *Id.*

This argument also fails. To be sure, Lyttle settled his claims against Personal Security Concepts, which he brought on behalf of putative classes,[9] in May of 2020, Doc. 47 at 1, which resulted in Lyttle dismissing his claims against Personal Security Concepts, Doc. 53 at 1. And Lyttle testified that he received approximately $10,000 from his settlement with Personal Security Concepts, with his counsel receiving the remaining amount, and acknowledged that he was unaware of any putative class members receiving settlement money. Doc. 70-1 at 288:12–21, 289:2–4, 301:12–18, 22–24.

---

[9] Lyttle initially brought three claims against Personal Security Concepts: he sued under 15 U.S.C. §§ 1681b(b)(1)(A)(i), 1681k, and 1681g. Doc. 1 ¶¶114–150. He brought each of these claims on behalf of a putative class: a "Certification Class," an "FCRA § 1681k Class," and an "FCRA § 1681g Class." *Id.* at ¶¶69–71, 121–122, 124–126, 128–130.

But Lyttle never moved to certify—and, consequently, the Court never certified—a class for any of the claims against Personal Security Concepts. Putative class members could have brought their own claims against Personal Security Concepts before or after the settlement, which occurred less than one year after Lyttle's initiation of this action. Lyttle's claims on behalf of putative classes against Personal Security Concepts did not prevent putative class members from suing Personal Security Concepts outside of this litigation or require putative class members to forgo filing actions against Personal Security Concepts pending the Court's ruling on certification of those putative classes in this action. During his deposition, Lyttle recognized a partially signed agreement between him and Personal Security Concepts as the governing settlement agreement. *Id.* at 296:18–25. Even if the Court assumes that this partially signed agreement constitutes the governing settlement agreement, the agreement does not prevent putative class members from initiating actions against Personal Security Concepts nor does the agreement otherwise waive or release any claims of putative class members against Personal Security Concepts.[10]

In support of its attack on Lyttle and his counsel, Trulieve relies upon two cases. Each is distinguishable. First, in *The Florida Bar v. Adorno*, an attorney negotiated a $7 million settlement on behalf of seven named plaintiffs to the detriment of the putative class, with his firm claiming a $2 million fee from the settlement, on the eve of trial, which was 83 times larger than the $84,000 value of the named plaintiffs' claims. 60

---

[10] The partially signed settlement agreement is in the record. Doc. 70-2 at 86–95.

So. 3d 1016, 1021, 1024 (Fla. 2011). Although the trial court had not yet certified the class at that time, the judge had repeatedly stated that class certification was "certain." *Id.* at 1020. The attorney also "hid the terms of the settlement agreement from the class through a nondisclosure agreement," and "stopped litigating on behalf of the class" as a result of a standstill agreement. *Id.* at 1029.

Trulieve argues only that the facts of *Adorno* are "very similar" to the facts of this action and that "the plaintiffs in *Adorno* agreed to for[go] a class action in an effort to extract a larger individualized settlement to the detriment of the potential class members." Doc. 70 at 10–11. But *Adorno* addresses attorney conduct violative of the Rules Regulating the Florida Bar. Here, on the other hand, the inquiry centers on the adequacy of Lyttle as a class representative and, relatedly, the competency and any conflicts of counsel. The disciplinary action against the attorney in *Adorno* where that attorney negotiated a settlement that was 83 times larger than the value of the named plaintiffs' claims and abandoned the putative class on the eve of trial where class certification was certain does not warrant finding that Lyttle or his counsel are inadequate under Rule 23(a) here.

Next, citing *Hauff v. Petterson*, No. 1:09-cv-00639 PJK-DJ, 2009 WL 4782732 (D.N.M. Dec. 11, 2009), Trulieve contends that "at least one other court has found similar attempts to 'sell out' the proposed class sufficient to render a class representative inadequate." *Id.* at 11. According to Trulieve, the *Hauff* court found that "a named plaintiff who made settlement demands while making no attempt to settle the claims on behalf of a putative class" suggested that "'he ha[d] asserted class

allegations as leverage for his individual claims rather than in the interests of the putative class,'" which, Trulieve contends, rendered the plaintiff and his counsel inadequate. *Id.* This language, which simply quotes an argument from the defendant's response regarding class counsel's competency, arises in the context of the court's discussion of class counsel. *Id.* at *9–10. The court identified numerous deficiencies with class counsel: counsel lacked class action experience and had failed to associate with a lawyer with class action experience; counsel shared many of the plaintiff's inadequacies; and counsel's definition of the class and attempt to shift blame for delay onto the insurer gave the court "serious reservations." *Id.* at *9. Then, in reviewing class counsel's competency, the court summarized the defendant's arguments against competency, such as continued efforts to settle only the named plaintiff's claim and halfhearted efforts to certify the class, including perfunctory briefing. *Id.* at *10. The court denied class certification as a result of all of these deficiencies, not just the competency issues, recognizing that many of the deficiencies were independently problematic. *Id.* Here, however, while Lyttle settled his claims against Personal Security Concepts before moving for class certification, he has not halfheartedly moved to certify the Adverse Action Class. As discussed above, the settlement did not prevent putative class members from suing Personal Security Concepts. And the record lacks any indication that the pervasive deficiencies in *Hauff* are present in this action. Thus, *Hauff* is distinguishable.

### 4. Damages

Finally, Trulieve argues that Lyttle "sacrifices the potential actual damages of the putative class members" to minimize the need for the Court to conduct individualized inquiries into the damages suffered by each putative class member. Doc. 70 at 16. Because Trulieve argues that Lyttle does not satisfy the adequacy prong of class certification as a result of this "sacrifice," the Court will address Trulieve's argument here.[11] For the reasons stated below, this argument is unavailing.

Damages available under the FCRA depend on whether the violation was negligent or willful. Any person who negligently fails to comply with any requirement with respect to a consumer is liable to that consumer in an amount equal to the sum of: (1) "any actual damages sustained by the consumer as a result of the failure"; and (2) in the case of any successful action to enforce any liability, the costs of the action, along with reasonable attorney's fees, as determined by the Court. 15 U.S.C. § 1681o(a). On the other hand, any person who willfully fails to comply with any requirement with respect to any consumer is liable to that consumer in an amount equal to the sum of: (1) "any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000"; or, "in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater"; (2) an amount

---

[11] Although Trulieve initially summarizes this argument as defeating typicality, adequacy, and superiority in the beginning of its response to the Motion to Class Certification, Trulieve treats this argument as an attack on the adequacy prong of class certification. Doc. 70 at 3, 16, 18.

of punitive damages as allowed by the Court; and (3) in the case of any successful action to enforce any liability, the costs of the action, along with reasonable attorney's fees, as determined by the Court. *Id.* § 1681n(a). Thus, the damages available under § 1681n(a) require the plaintiff to prove willful violations.

Here, Lyttle alleges that, by failing to provide him and other putative class members with the information required under 15 U.S.C. § 1681b(b)(3)(A) before taking adverse action against them based on information contained in reports, Trulieve willfully disregarded unambiguous regulatory guidance and the statute's plain language. Doc. 1 ¶41. Contending that Trulieve's violations of the statute were willful, Lyttle alleges that he and the members of the Adverse Action Class are entitled to statutory damages of $100 and not more than $1,000, punitive damages, and their costs and attorneys' fees under § 1681n. *Id.* at ¶¶110–112.

To the extent that any class members may have higher individual damages, they may opt out of the class action. *Legg v. Spirit Airlines*, 315 F.R.D. 383, 390 (S.D. Fla. 2015) (rejecting a challenge to adequacy and explaining that "any potential class members who believe they would be better off pursuing actual damages may simply opt out of this suit"); *Braxton v. Farmer's Ins. Grp.*, 209 F.R.D. 654, 660 (N.D. Ala. 2002), *aff'd sub nom. Braxton v. Fire Ins. Exch.*, 91 F. App'x 656 (11th Cir. 2003) ("[T]his alleged conflict can be eliminated by an appropriate notice to class members, advising them of the type of damages sought by the class representative. Because certification is sought under Rule 23(b)(3), class members will have the opportunity to opt out of the class and pursue their claims individually, should they choose to do so."). Trulieve

fails to support its contention that "greater risk to the absent class members' potential to recover actual damages" exists because "the alleged violations may have adversely impacted employment decisions." Doc. 70 at 18. The Court has previously certified a class in an FCRA action where the plaintiff sought statutory damages under § 1681n and alleged that the defendant denied him employment. *Gross v. Adv. Disposal Servs., Inc.*, No. 8:17-cv-1920-CEH-TGW, 2018 WL 8415876, at *1–2, 8 (M.D. Fla. Dec. 10, 2018). As such, this argument is unavailing.[12]

### 5. Conclusion

Trulieve's arguments against adequacy fall short. A review of the briefing, including Lyttle's declaration, Lyttle's deposition testimony, and the declarations from his counsel, demonstrates that Lyttle will fairly and adequately protect the interests of the Adverse Action Class. Lyttle has demonstrated sufficient familiarity with the nature of his claim. He has also recognized the interests of the Adverse Action Class and his role as class representative. And he has shown active participation in the litigation. He will adequately prosecute the action, and a substantial conflict of interest between him and the Adverse Action Class does not exist. Further, the record does not demonstrate any conflicts of class counsel. Class counsel is competent and, as

---

[12] Trulieve also argues that Lyttle failed to conduct any reasonable investigation into his allegations prior to filing the lawsuit. Doc. 70 at 9. In support, Trulieve highlights deposition testimony, in which Lyttle stated that he had not discussed his claim with anybody who allegedly suffered the same harm and he admitted that he did not have personal knowledge of whether individuals were treated the same way. *Id.* (citing Doc. 70-1 at 177:3–9, 15). But Trulieve does not provide any authority to explain why this testimony results in a finding of inadequacy.

demonstrated by their declarations, experienced. Doc. 61-4 at 2; Doc. 61-5 at 3–4; Doc. 61-6 at 3–4. Therefore, Lyttle has carried his burden of demonstrating adequacy.

### C. Rule 23(b) Requirements

A plaintiff seeking class certification must satisfy Rule 23(a) and one of the requirements under Rule 23(b). Here, Lyttle relies upon Rule 23(b)(3). Doc. 61 at 16. Under Rule 23(b)(3), "questions of law or fact common to class members" must "predominate over any questions affecting only individual members" and the class action must be "superior to other available methods for fairly and effectively adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Thus, Rule 23(b)(3) requires a showing of predominance and superiority.

### i. *Predominance*

"To obtain Rule 23(b)(3) class certification, 'the issues raised in the class action that are subject to generalized proof and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof.'" *Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183, 1191 (11th Cir. 2009) (quoting *Kerr v. City of W. Palm Beach*, 875 F.2d 1546, 1558 (11th Cir. 1989)). "Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief," but common issues do not predominate over individual questions "if, as a practical matter, the resolution of an overarching common issue breaks down into an unmanageable variety of individual legal and factual issues." *Carriuolo v. Gen. Motors Corp.*, 823 F.3d 977, 985 (11th Cir. 2016) (quoting *Babineau*, 576 F.3d at 1191).

"Certification is inappropriate if the plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individual claims." *Babineau*, 576 F.3d at 1191 (internal quotation marks omitted). The predominance requirement under Rule 23(b) is "far more demanding" than the commonality requirement under Rule 23(a). *Carriuolo*, 823 F.3d at 985 (internal quotation marks omitted).

Here, common questions of law and fact predominate. The central issue is whether Trulieve provided applicants and employees with notice, a copy of their report, and summary of rights under § 1681b(b)(3)(A) before taking adverse action against them. If Trulieve violated the FCRA, another common question is whether Trulieve's violations were willful.

Trulieve does not expressly challenge predominance, but argues that the Adverse Acton Class's definition requires an individualized assessment of class members' eligibility. Doc. 70 at 11–13. Specifically, because Lyttle proposes a five-year class period in the Adverse Action Class definition, Trulieve contends that Lyttle fails to demonstrate how the Court can apply the FCRA's five-year statute of limitations without making improper individualized inquiries. As the predominance inquiry under Rule 23(b)(3) necessarily involves an examination of any issues subject only to individualized proof and whether the resolution of a common issue breaks down into an unmanageable variety of individual legal and factual issues, the Court will address this argument here. *See Fosbrink v. Area Wide Protective, Inc.*, 325 F.R.D. 474, 482 (M.D. Fla. 2018) (addressing the defendant's argument that the plaintiff's

proposed five-year class period would require an individualized determination for each class member when analyzing predominance under Rule 23(b)(3)).

The FCRA provides:

> An action to enforce any liability created under this subchapter may be brought in any appropriate United States district court, without regard to the amount in controversy, or in any other court of competent jurisdiction, not later than the earlier of—
>
> (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or
>
> (2) 5 years after the date on which the violation that is the basis for such liability occurs.

15 U.S.C. § 1681p.

Thus, an action to enforce any liability must be brought not later than the earlier of (1) 2 years after the date of the plaintiff's discovery of the violation that is the basis for that liability; or (2) 5 years after the date on which the violation that serves as the basis for the liability occurs. As such, Trulieve contends that, for every alleged violation occurring more than two years before the filing of the lawsuit, the Court would need to determine when the individual actually discovered the violation giving rise to the claim. Doc. 70 at 11–12. Trulieve contends that the Court should deny class certification or, if the Court decides that "certification of a limited class is proper," limit the class to claims based on alleged violations occurring within a two-year period prior to the filing of the complaint. *Id.* at 13.

The proposed five-year class period, by itself, does not warrant denying the Motion for Class Certification. *See Fosbrink*, 325 F.R.D. at 483 (agreeing with the defendant that the class period should be limited to two years, rather than five years,

and modifying the definition accordingly, rather than denying class certification). But the Court agrees with Trulieve's concerns about the five-year class period and rejects that portion of the Adverse Action Class's definition. A five-year class period would "require an individualized determination for each class member as to when the violation that gave rise to his or her claim was discovered." *Id.* at 482. "Predominance is met only under the application of a two-year statute of limitations, which would not require an individualized inquiry." *Id.* at 483. Thus, the Court concludes that Lyttle satisfies predominance under Rule 23(b)(3) as long as the class period is limited to a two-year period. The Court will modify the Adverse Action Class's definition accordingly.

ii.   *Superiority of Class Action*

Rule 23 requires a finding that "[the] class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "[T]he superiority requirement of Rule 23(b)(3) turns on whether a class action is better than other available methods of adjudication . . . ." *Cherry*, 986 F.3d at 1304. "[T]he predominance analysis has a tremendous impact on the superiority analysis . . . for the simple reason that, the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims . . . ." *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1184 (11th Cir. 2010). The Court looks to the non-exclusive factors listed in Rule 23(b)(3):

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)–(D).

Lyttle satisfies the superiority requirement under Rule 23(b)(3). As Lyttle points out, individual class members likely do not have an interest in instituting a lawsuit or in controlling their own individual actions. Each individual claim is likely modest. Neither party has notified the Court of other individual FCRA actions against Trulieve. Concentrating the litigation of the claims in this forum is desirable, given that Lyttle alleges that the underlying events occurred within the Court's territorial boundaries. And Trulieve does not object to Lyttle's representation that Trulieve's headquarters and the "overwhelming majority of [Trulieve's] retail outlets" are located in Florida. Doc. 61 at 18. Lyttle correctly highlights that concentrating the universe of identical FCRA claims in this Court will avoid a multiplicity of actions, serve as the most efficient means for Lyttle and the putative class to enforce their rights, and conserve resources. The process of bringing individual actions would be more onerous than managing a class action. The difficulties of managing a class action like this one would likely be minimal.

Trulieve argues that a class action is not a superior means of adjudicating this dispute because "the claims of the absent class members are potentially much larger

than the amounts courts consider insignificant such as to deter others from bringing individual actions" when considering potential actual damages and attorney's fees. Doc. 70 at 19. Trulieve likens this action to *Silva v. Bright House Networks, LLC*, in which the court found superiority to be lacking where the plaintiff had conceded that the average recovery for individual class members ranged from $2,500 to $7,000, which weighed against a finding that class members would avoid filing individual Telephone Consumer Protection Act actions. 333 F.R.D. 255, 281–82 (M.D. Fla. 2019). But Trulieve fails to explain why class members here should expect comparable recoveries. Trulieve's remaining cases lack persuasive value. Thus, this argument also fails. Lyttle has met the superiority requirement under Rule 23(b)(3).

## IV.   CONCLUSION

Because Lyttle has satisfied the requirements under Rule 23(a) and one of the requirements under Rule 23(b), the Court will certify the Adverse Action Class. However, the Court will modify the definition of the Adverse Action Class to provide for a two-year term, rather than a five-year term. The Court will also approve Lyttle as Class Representative and Lyttle's counsel as Class Counsel.

Accordingly, it is **ORDERED**:

1.   Plaintiff's Motion for Class Certification (Doc. 61) is **GRANTED-IN-PART and DENIED-IN-PART**.

2.   The Court certifies the following class:

> All Trulieve applicants and employees in the United States against whom adverse employment action was taken,

based, in whole or in part, on information contained in a consumer report obtained within two years preceding the filing of this action through the date of final judgment, who were not provided notice, a copy of their report or a summary of rights pursuant to 15 U.S.C. § 1681b(b)(3)(A).

3.      The Court approves Logan Lyttle as Class Representative and his counsel, Marc. R. Edelman, Brandon J. Hill, and Luis A. Cabassa, as Class Counsel.

4.      The parties are provided thirty (30) days from the date of this order to confer on a class notice plan and issues that may arise associated with the administration of the class, including the form and content of the notice, and the establishment of an opt-out period and procedure, and they shall advise the Court of these efforts and the existence of any issues that require the Court's resolution.

**DONE AND ORDERED** in Tampa, Florida on August 13, 2021.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any